THE HONORABLE TANA LIN

1
2
3
4
5
6
7

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON AT SEATTLE

8

9   INFORMATIVE TECHNOLOGY
    SYSTEMS, LLC,

10                                              NO.  2:21-cv-01594

                          Plaintiff,
11                                              DEFENDANT AXINOM CORPORATION'S
          vs.                                   MOTION TO DISMISS FOR FAILURE TO
12                                              STATE A CLAIM UNDER FEDERAL RULE
    AXINOM CORPORATION,                         12(b)(6)
13
                                                NOTE ON MOTION CALENDAR:
14                        Defendant.            September 23, 2022

15
                                                ORAL ARGUMENT REQUESTED
16

17              **I.      INTRODUCTION AND RELIEF REQUESTED**

18          Defendant  Axinom  Corporation  ("Axinom"),  pursuant  to  Fed.  R.  Civ.  P.  12(b)(6),

19   respectfully moves the Court to dismiss all Counts of the Complaint filed by Plaintiff Informative

20   Technology Systems, LLC ("ITS") for failure to state any claim upon which relief can be granted.

21                    **II.      STATEMENT OF FACTS**

22       **A.      ITS and its Campaign of Litigation.**

23          ITS claims to be the current assignee of the United States Patent No. 8, 156, 151 ("'151

24   Patent"). ITS is a non-practicing entity that has been and still is based out of a virtual office space.

25

DEFENDANT AXINOM CORPORATION'S
MOTION TO DISMISS FOR FAILURE TO STATE
A CLAIM UNDER RULE 12(b)(6) - 1
Case No. 2:21-cv-01594

H E L S E L L
F E T T E R M A N

Helsell Fetterman LLP
1001 Fourth Avenue, Suite 4200
Seattle, WA 98154-1154
206.292.1144  **WWW.HELSELL.COM**

*See* Declaration of Michelle Q. Pham in Support of Defendant's Motion to Dismiss ("Pham Decl."), Ex. 1. ITS was formed on June 8, 2021 and the '151 Patent was assigned to ITS a few weeks after. *Id*., Exs. 2-4. Since such assignment, ITS has filed at least six separate patent infringement actions asserting the '151 Patent, including this one against Defendant on November 26, 2021.

The corporate parent of ITS is Patent Asset Management, LLC (Dkt. # 2), whose Chief Executive Officer and founder, Leigh M. Rothschild ("Rothschild"), is notorious for filing questionable patent infringement lawsuits across the United States through a number of shell companies. Pham Decl., Exs. 5-6. In fact, Rothschild has been sanctioned by the Federal Circuit for vexatious litigation. *See, e.g., Rothschild Connected Devices Innovations, LLC v. Guardian Prot. Servs*., 858 F.3d 1383 (Fed. Cir. 2017) (reversing the district court's denial of attorney fees, finding the Rothschild-controlled patentee showed a pattern of litigation abuses); *Rothschild Dig. Confirmation, LLC v. CompanyCam, Inc*., 494 F. Supp. 3d 263 (D. Del. 2020) (granting motion to declare exceptional case under 35 U.S.C. § 285 and for an award of attorneys' fees, finding that "it [was] clear—at the outset or otherwise—that [the Rothschild patent would] fall under § 101" and that the patentee controlled by Rothschild showed a "troubling" pattern of litigation conduct).

### B.     The '151 Patent.

On April 14, 2010, the '151 Patent was filed, and it was issued on April 10, 2012, all before the Supreme Court's decision in *Alice* to apply a two-part test to determine a patent's invalidity, which is discussed below. Such patent is a continuation of Application No. 10/470,352, filed on January 25, 2002. Therefore, the '151 Patent expired on January 25, 2022.

H E L S E L L
F E T T E R M A N

Helsell Fetterman LLP
1001 Fourth Avenue, Suite 4200
Seattle, WA 98154-1154
206.292.1144   **WWW.HELSELL.COM**

The '151 Patent states that it relates to "track[ing] information access over a communications network." '151 Patent at Abstract. However, the patent does not describe any new tracking or controlling information access. Instead, the patent acknowledges in its discussion of "Background" technology that controlling access to information was already known and conventional using Digital Rights Management ("DRM") systems: "Current DRM systems include languages for describing the terms and conditions for use of an asset, tracking asset usage by enforcing controlled environments or encoded asset manifestations, and closed architectures for the overall management of the digital rights," which can include "digital rights to the physical manifestation of a work (e.g., a textbook)." *Id*. at 4:18-30. Additionally, the '151 Patent also reveals that information access is controlled by using "conventional cryptographic techniques such as … digital signatures, enveloping, password access protection, public key management, and/or the like." *Id*. at 11:38-43.

In the "Background" section of the specification, the '151 Patent also acknowledges that identifying resources and users with unique identifiers was known and conventional. Specifically, the '151 Patent describes that "[o]ne common type of Handle is known as a Digital Object Identifier (DOI)." *Id*. at 3:62-64; *see generally id*. at 3:37-4:17. Conventional DOI handle systems associate digital content and users with identifiers. *Id.* Abstract ("Both content and people are registered with [the] Digital Object Identifier (DOI) handle system."), 22:33-54. The identifier associated with an information source is based on the content of the resource as opposed to specific network location. *See id*. at 3:37-4:17.



The "Background" section of the '151 Patent also refers to a content-based information identifier as a "Universal Name Identifier (UNI)," "Digital Object Identifiers (DOI)," or "unique, persistently accessible, and universal name identifier (UPUNI)" and describes them as known identifiers in the field or extensions of known identifiers. *See id*. at 3:49-59; *id.* at Claims 1, 2, 12. Such identifiers are referred to in the "Background" section as known identifiers in the field or extensions of known identifiers. *Id.* An identifier that is assigned to a user, person or entity is "associated with the user's person, the user's device representing his or her person, and/or the like." *Id.* at 22:45-47. The '151 Patent describes a user identifier as a "personal DOI" or "entity information (EREI)" or "unique, persistently accessible, and universal name identifier that represents the entity (E-UPUNI)." *See, e.g., id.* at 22:44-47; *id.* at Claims 1, 2, 12. The '151 Patent does not, however, describe any new technology for generating or managing such identifiers or providing access rights.

Instead, the '151 Patent notes that the handle system is intended for use with "common computer systems" that comprise "conventional computer systemization" connected to "conventional computer system storage." *Id.* at 6:25-29, 8:22-40, Figure 1. In fact, the '151 Patent provides that the database for storage and management of identifiers and security information registered with the handle system is done by a "conventional" database or database "implemented using various standard data-structures." *Id.* at 10:45-47, 10:59-61.

After a user requests access to an information resource, the specification describes using the well-known public key infrastructure (PKI) authentication system (e.g., a conventional DRM



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

implementation, as discussed above) uses identifiers and security information registered with the handle system to verify access rights.

Figure 17 of the '151 Patent is an illustration of the purported invention. In particular, it indicates a process for "a public key infrastructure for content access for information tracking" which entails the system: (1) retrieving the content identifier (DOI) in order for the information resource (the "content") to be accessed (1702); (2) determining whether content access is restricted (1703); (3) retrieving and/or creating a personal identifier (DOI) specific to the user seeking content access (1706-1708); (4) submitting a request for access to the restricted content (1709); (5) redirecting to a rights clearinghouse (R.C.) within a PKI system (1710-1711), which performs a verification of the user's access rights (1712) which if verified; (6) provides the verified user access to the restricted content (1713-1714). *See id*. at 25:36-26:51.

DEFENDANT AXINOM CORPORATION'S
MOTION TO DISMISS FOR FAILURE TO STATE
A CLAIM UNDER RULE 12(b)(6) - 5
Case No. 2:21-cv-01594



Helsell Fetterman LLP
1001 Fourth Avenue, Suite 4200
Seattle, WA 98154-1154
206.292.1144   WWW.HELSELL.COM



Figure 17

## C.     ITS' Asserted Claims.

The Complaint asserts infringement of Claim 12 of the '151 Patent. Dkt. #1, ¶¶ 13-15, Ex. B.  The asserted Claim 12 merely recites a series of steps for "effecting" desired results without detailing any technical specifications as to how such results are achieved. Claim 12 sets forth a



"method of using at least one computer to effect access to information, comprising: [a] effecting determination of if information an entity desires to access (desired information) on the entity's access device (entity device) has an unique, persistently accessible, and universal name identifier (UPUNI) embedded within the desired information; [b] effecting determination of if the desired information is inaccessible; [c] effecting determination of if there exists an UPUNI that represents the entity (E-UPUNI); [d] effecting the generation of the E-UPUNI, if the entity is un-represented by an UPUNI; [e] effecting the resolution of the entity device to the desired information's UPUNI (DI-UPUNI); [f] effecting the provision of entity verification information; [g] effecting verification of the entity's identity and access rights to the desired content with the provided entity verification information (entity verification); [and] [h] effecting provision of access credentials, if the entity's identity and access rights to the desired content are verified."

Claim 12 tracks the process set forth in Figure 17 and involves the following steps: (1) the limitation [a] involves determining the content identifier ("UPUNI" or "DI-UPUNI") of an identified information resource ("desired information") (1702); (2) limitation [b] involves determining if the access to the desired information is restricted or not (1703); (3) limitations [c] through [d] involve identifying and/or naming the user ("entity") requesting the information (1706-1708); (4) limitations [e] through [f] involve obtaining the user's security information ("verification information") (1709-1711); (5) limitation [g] involves verifying the user's access rights to the desired information (1712); and (6) limitation [h] involves granting the verified user access to the desired information (1713-1714).



As shown above, Claim 12 merely recites the use of a content and user identifier to control access to an information resource, and nothing more.

### III.    ISSUE PRESENTED

Should this Court dismiss Plaintiff's Complaint for failure to state a claim or claims upon which relief can be granted? **Answer: Yes.**

### IV.    EVIDENCE RELIED UPON

This Motion is based upon the insufficiency of the allegations set forth in the Complaint (Dkt. #1) and Exhibit B to the Complaint (Dkt. #1-2) and the Declaration of Michelle Q. Pham, the exhibits attached thereto, as well as the pleadings, files and authorities herein.

### V.    ARGUMENT

**A.    Legal Standards.**

1.    <u>Motion to Dismiss</u>.

A court may dismiss a complaint for failure to state a claim on which relief can be granted for (1) the lack of a cognizable legal theory, or (2) for insufficient facts under a cognizable legal theory. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007); Fed. R. Civ. P. 12(b)(6). In order "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570). In order for a patent infringement action to survive a motion to dismiss, "the assertions in the patent itself" must be sufficient to create an issue of fact and the complaint must contain "specific factual allegations." *PTP OneClick, LLC v. Avalara, Inc.*, 413 F. Supp. 3d 1050, 1062 (W.D. Wash. 2019).

DEFENDANT AXINOM CORPORATION'S
MOTION TO DISMISS FOR FAILURE TO STATE
A CLAIM UNDER RULE 12(b)(6) - 8
Case No. 2:21-cv-01594



Helsell Fetterman LLP
1001 Fourth Avenue, Suite 4200
Seattle, WA 98154-1154
206.292.1144  **WWW.HELSELL.COM**

In deciding a motion to dismiss, a court may consider certain documents and information outside the four corners of the complaint without converting the motion to a summary judgment motion. For example, under Federal Rule of Civil Procedure 10(c), a "copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes," and a court may consider it in determining a motion to dismiss. *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 556 (7th. Cir. 2012) ("In deciding a Rule 12(b)(6) motion, the court may also consider documents attached to the pleading without converting the motion into one for summary judgment."). Indeed, when considering a claim chart that is part of a complaint, a "court is not bound to accept the pleader's allegations as to the effect of the exhibit but can independently examine the document and form its own conclusions as to the proper construction and meaning to be given the material." *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th. Cir. 2002) (quoting 5 Wright & Miller, Federal Practice & Procedure: Civil 2d, § 1327 at 766 (1990)).

Similarly, a Court may consider information that is properly the subject of judicial notice, such as matters of public record, in deciding a motion to dismiss. *Snap-On Inc. v. Hunter Eng'g*, 29 F. Supp. 2d 965, 969 (E.D. Wis. 1998) (considering public records from the U.S. Patent and Trademark Office in determining a motion to dismiss); *Thomas & Betts Corp. v. Panduit Corp.*, 65 F.3d 654, 664 n.12 (7th Cir. 1995) (taking judicial notice of patent in a trade dress infringement case). A patent's specification and file history are both public records and part of the patent's intrinsic record that inform the scope and meaning of a patentee's claims. *See, e.g.*, *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 987 (Fed. Cir. 1995) ("the specification and prosecution history of a patent are public records"); *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583

HELSELL
FETTERMAN

Helsell Fetterman LLP
1001 Fourth Avenue, Suite 4200
Seattle, WA 98154-1154
206.292.1144  WWW.HELSELL.COM

(Fed. Cir. 1996) (describing the prosecution history as part of the public record and the intrinsic evidence of a patent); *Biogen Idec., Inc. v. GlaxoSmithKline LLC*, 713 F.3d 1090, 1095 (Fed. Cir. 2013) ("the entirety of a patent's file history captures the public record of the patentee's representations concerning the scope and meaning of the claims...."). The Court may also take judicial notice of "authentic documents recorded with the Secretary of State. *Grassmueck v. Barnett*, 281 F. Supp. 2d 1227, 1232 (W.D. Wash. 2003) (granting request for judicial notice of public records kept by the Secretary of State).

2. <u>Patent Eligibility is a Threshold Legal Issue that May Be Decided on a Rule 12(b)(6) Motion to Dismiss.</u>

Plaintiff's '151 Patent is not patent-eligible. Under 35 U.S.C. § 101, patent eligibility is a "threshold test" that should be decided early in a case. *See Bilski v. Kappos,* 561 U.S. 593, 602, 130 S. Ct. 3218, 3225, 177 L. Ed. 2d 792 (2010). Whether a claim recites patent-eligible matter under Section 101 is a question of law, which may involve underlying facts. *See Berkheimer v. HP Inc.,* 881 F.3d 1360, 1368 (Fed. Cir. 2018); *Aatrix Software, Inc. v. Green Shades Software, Inc.,* 882 F.3d 1121, 1125 (Fed. Cir. 2018). This question is frequently resolved on the pleadings "where the undisputed facts … require a holding of ineligibility under the substantive standards of law." *SAP Am., Inc. v. Investpic, LLC,* 898 F.3d 1161, 1166 (Fed. Cir. 2018).

The Federal Circuit has "repeatedly recognized that in many cases it is possible and proper to determine patent eligibility under 35 U.S.C. § 101 on a Rule 12(b)(6) motion." *Genetic Techs. Ltd. v. Merial L.L.C*., 818 F.3d 1369, 1373 (Fed. Cir. 2016); *ChargePoint, Inc. v. SemaConnect, Inc.,* 920 F.3d 759, 773-75 (Fed. Cir. 2019) (affirming dismissal on the pleadings of patent claims concerning remotely controlling charging stations over a network); *Cleveland Clinic Found. v.*

H E L S E L L
F E T T E R M A N

Helsell Fetterman LLP
1001 Fourth Avenue, Suite 4200
Seattle, WA 98154-1154
206.292.1144   WWW.HELSELL.COM

*True Health Diagnostics LLC,* 859 F.3d 1352, 1360 (Fed. Cir. 2017) ("[W]e have repeatedly affirmed § 101 rejections at the motion to dismiss stage, before claim construction or significant discovery has commenced."); *Internet Patents Corp. v. Active Network, Inc.,* 790 F.3d 1343, 1348-49 (Fed. Cir. 2015) (affirming dismissal under § 101 where claims directed to abstract idea of "retaining information in the navigation of online forms"); *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n,* 776 F.3d 1343, 1348 (Fed. Cir. 2014) (affirming dismissal where claims merely recited use of generic scanner and computer technology to "perform well-understood, routine, and conventional activities commonly used in industry"). This is because patent eligibility under Section 101 is a question of law, and resolution is appropriate where, as in this case, there are no factual allegations in the Complaint that create a contested underlying issue of material fact. *See Aatrix Software,* 882 F.3d at 1125; *SAP Amer.,* 898 F.3d at 1166. In this instance, the issue may be decided on undisputed facts from the claims, specification, and prosecution history. *See id.*

Consistent with this precedent, this Court has previously granted motions to dismiss dismissed claims of patent infringement based on patent ineligibility under Section 101. *See Uniloc USA, Inc. v. Big Fish Games, Inc.,* 320 F. Supp. 3d 1178, 1184 (W.D. Wash. 2018), aff'd, 777 Fed. Appx. 517 (Fed. Cir. 2019); *PTP OneClick, LLC v. Avalara, Inc.,* 413 F. Supp. 3d 1050, 1070 (W.D. Wash. 2019); *Appistry, Inc. v. Amazon.com, Inc.,* 195 F. Supp. 3d 1176, 1184 (W.D. Wash. 2016), *aff'd sub nom. Appistry, LLC v. Amazon.com, Inc.,* 676 Fed. Appx. 1008 (Fed. Cir. 2017). The Supreme Court sets forth the following two-part test for deciding the validity of a patent based on abstract ideas. *Alice*, 573 U.S. at 217.

DEFENDANT AXIOM CORPORATION'S
MOTION TO DISMISS FOR FAILURE TO STATE
A CLAIM UNDER RULE 12(b)(6) - 11
Case No. 2:21-cv-01594



Helsell Fetterman LLP
1001 Fourth Avenue, Suite 4200
Seattle, WA 98154-1154
206.292.1144    WWW.HELSELL.COM

**B.      The Asserted Claim of the '151 Patent is Invalid Under 35 U.S.C. § 101.**

Claim 12 of the '151 Patent cannot survive the scrutiny demanded by *Alice.* Claim 12 is directed to the abstract idea of controlling access to information using unique identifiers. Under Section 101, abstract ideas cannot be patented. *Alice Corp. Pty. Ltd. V. CLS Bank Int'l*, 573 U.S. 208, 216, 134 S. Ct. 2347, 2354, 189 L. Ed. 2d 296 (2014). In *Alice,* the Supreme Court set forth a two-step test to determine whether a patent is invalid for claiming abstract ideas. *Id.* at 217. Plaintiff's Complaint fails to overcome the *Alice* two-step test.

In addition, the claim lacks an "inventive concept" sufficient to transform this abstract idea into patent-eligible subject matter because Claim 12 simply recites using a generic "computer" to "effect" the abstract method steps. Accordingly, the asserted Claim 12 is invalid as a matter of law under Section 101, and the Court should grant Defendant's motion to dismiss the Complaint with prejudice.

1.  <u>The Asserted Claim of the '151 Patent Fails the *Alice* Test Because it is Directed to an Abstract Idea</u>**.**

In step one of the *Alice* test, the court must determine whether the character of the claim in its entirety is directed to an abstract idea. *Alice,* 573 U.S. at 219. *Elec. Power Group, LLC v. Alston S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016).

Here, the asserted Claim 12 of the '151 Patent is drawn to the abstract idea of controlling access to information using unique identifiers—*i.e.*, using content and user identifiers to determine whether to provide access to otherwise restricted information. *See* Section II.C, *supra*. The claim language of the '151 Patent confirm this itself. As discussed above, Claim 12 recites the six steps of determining the unique identifier associated with the requested information and so forth.

DEFENDANT AXIOM CORPORATION'S
MOTION TO DISMISS FOR FAILURE TO STATE
A CLAIM UNDER RULE 12(b)(6) - 12
Case No. 2:21-cv-01594



Helsell Fetterman LLP
1001 Fourth Avenue, Suite 4200
Seattle, WA 98154-1154
206.292.1144   **WWW.HELSELL.COM**

Beyond the access control function, the claim has no purpose whatsoever. It does not recite any practical use or application of the identifiers except for the sake of access control. Thus, the character as a whole of the claim is controlling access to information using unique identifiers. *See Elec. Power,* 830 F.3d at 1353-54.

The specification of the '151 Patent confirms this focus of the asserted Claim 12. For example, the patent describes the method of Claim 12 in the "Summary" section of the specification as "using at least one computer to effect access to information" using the steps identified above, which do not recite anything but the generic use of identifiers to control access to data. *See* '151 Patent at 4:65-5:14.

Courts have held that the idea of using and generating unique identifiers to control access to information is abstract under step one of *Alice*. In *PersonalWeb,* the Federal Circuit affirmed the district court's observation that the function of "controlling access to data items" is abstract. *PersonalWeb Techs. LLC v. Google LLC,* 8 F.4th 1310, 1316 (Fed. Cir. 2021), cert. denied, 142 S. Ct. 1445, 212 L. Ed. 2d 540 (2022) (affirming the district court's ruling that claims directed to "using a known, content-based identifier to control access to data" are invalid under Section 101; finding that the "function[] of [controlling access to data items][is a] mental process[] that can be performed in the human mind or using a pencil and paper – a telltale sign of abstraction" and "a computer environment … does not transfigure [that] idea out of the realm of abstraction.") (internal quotations omitted)). In *PersonalWeb*, the Federal Circuit also specifically emphasized that "the use of a content-based identifier ... was abstract" and that "[g]enerating such identifiers via a known algorithm is no less abstract." 8 F.4th at 1316.

HELSELL
FETTERMAN

Helsell Fetterman LLP
1001 Fourth Avenue, Suite 4200
Seattle, WA 98154-1154
206.292.1144   WWW.HELSELL.COM

In *Ericsson Inc. v. TCL Communication Technology Holdings Limited*, 955 F.3d 1317 (Fed. Cir. 2020), the Federal Circuit similarly found claims unpatentable "directed to the abstract idea of controlling access to, or limiting permission to, resources." *Id.* at 1328 ("[c]ontrolling access to resources ... is pervasive in human activity, whether in libraries (loaning materials only to card-holding members), office buildings (allowing certain employees entrance to only certain floors), or banks (offering or denying loans to applicants based on suitability and intended use).").

Identifying or naming a user with a unique identifier is abstract. *See Bridge & Post, Inc. v. Verizon Commc'ns, Inc.*, 778 Fed. Appx. 882, 890 (Fed. Cir. 2019) (finding claims unpatentable, including "determining user information for a user" and "generating a user identifier for the user from the determined user information"); *see also Prism Techs. LLC v. T-Mobile USA, Inc.*, 696 F. App'x 1014, 1016-17 (Fed. Cir. 2017) ("systems and methods that control access to protected computer resources by authenticating identity data [of a user]" are directed to an abstract idea).

Consistent with this principle, courts have consistently confirmed that the abstract idea of "providing restricted access to resources," *Prism*, 696 F. App'x at 1017, and "conditioning and controlling access to data," *Smartflash LLC v. Apple Inc.*, 680 F. App'x 977, 982 (Fed. Cir. 2017), are <u>not</u> patentable. Stringing together in asserted Claim 12 one abstract idea to another—i.e., using content identifiers and user identifiers to control access to data—does not save the claim under *Alice* Step one. *See PersonalWeb*, 8 F.4th at 1317-18 (affirming this Court's ruling that claims "directed to the use of an algorithm-generated content-based identifier to perform the ... function[] ... [of] controlling access to data items" were unpatentable and finding such "claims as a whole ... are

DEFENDANT AXINOM CORPORATION'S
MOTION TO DISMISS FOR FAILURE TO STATE
A CLAIM UNDER RULE 12(b)(6) - 14
Case No. 2:21-cv-01594

HELSELL
FETTERMAN

Helsell Fetterman LLP
1001 Fourth Avenue, Suite 4200
Seattle, WA 98154-1154
206.292.1144   **WWW.HELSELL.COM**

directed to a medley of mental processes that, taken together, amount only to a multistep mental process").

Asserted Claim 12 is also abstract for the independent reason that it does not recite any improvements to computer functionality. Instead, Claim 12 recites only steps to "<u>effect</u>" certain desired results for controlling access to data with the use of identifiers, without specifying at all how the desired results are achieved. In other words, the recited "computer" is merely a generic tool to carry out the described functions. Claims written in result-based functional language, reciting no particular way of performing a function, like asserted Claim 12, are patent ineligible. *ChargePoint*, 920 F.3d at 769-70 (ruling claims abstract when "drafted in such a result-oriented way that they amount[] to encompassing the 'principle in the abstract' no matter how implemented") (citation omitted and emphasis added); *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC,* 874 F.3d 1329, 1334–35, 1337–38 (Fed. Cir. 2017) (finding a claim abstract because it "requires the functional results of 'converting,' 'routing,' 'controlling,' 'monitoring,' and 'accumulating records,' but does not sufficiently describe *how* to achieve these results in a non-abstract way") (emphasis added).

For all the reasons above, the asserted Claim 12 of the '151 Patent fails step one of the *Alice* test as it is directed toward an abstract idea.

2. <u>The Asserted Claim of the '151 Patent Also Fails Step Two of the *Alice* Test as it Lacks any "Inventive Concept."</u>

The asserted Claim 12 of the '151 Patent also does not contain any "inventive concept" to transform the abstract idea into patent-eligible subject matter. If, after assessing *Alice* step one and concluding that the claims are directed to an abstract idea, then the Court must proceed to *Alice*



step two to determine whether the claims include an "inventive concept" that is "significantly more" than the abstract idea, "sufficient to transform the claimed abstract idea into a patent-eligible application." *Alice*, 573 U.S. at 221.

To avoid invalidation under this second step, the claims "must include additional features" that "must be more than well-understood, routine, conventional activity." *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014) (citations and internal quotation marks omitted); *see also Intellectual Ventures I LLC v. Erie Indemnity Co.*, 850 F.3d 1315, 1331 (Fed. Cir. 2017) (requiring claims do more than "simply recite[] that the abstract idea will be implemented using the conventional components and functions generic to" a given technological environment). As such, the asserted patent claim must "describe[] *how* its particular arrangement of elements is a technical improvement over prior art ways of" accomplishing the abstract ideas identified in step one of the *Alice* framework. *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016) (emphasis added).

Accordingly, simply using generic technology does not save a claim under step two of the *Alice* inquiry, even if that technology is embodied in a tangible form. For example, "the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Alice*, 573 U.S. at 223; *see also buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) ("That a computer receives and sends the information over a network—with no further specification—is not even arguably inventive."). Nor can the "abstract idea itself . . . supply the inventive concept that renders the invention significantly more than that ineligible concept." *ChargePoint*, 920 F.3d at 774 (Fed. Cir. 2019) (affirming dismissal under Rule 12(b)(6)).

"An inventive concept must be evident in the claims" to save it from step two. *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017). An "inventive concept"



involves "significantly more" than an abstract idea "sufficient to transform the claimed abstract idea into a patent-eligible application." *Alice*, 573 U.S. at 221. Thus, in this context, "[f]or the role of a computer in a computer-implemented invention to be deemed meaningful in the context of this analysis, it must involve more than the performance of 'well-understood, routine, [and] conventional activities previously known to the industry." *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1347-48 (Fed. Cir. 2014).

Here, the specification of '151 Patent, however, repeatedly emphasizes that all components and functions recited by its claims were known and conventional, as explained above. *See* '151 Patent at 3:37-4:41 (noting that using of unique content identifiers and controlling access to information, including with DRM systems, was known and "[c]ommon" in the art); 11:38-43 ("[p]referably, the cryptographic module allows conventional cryptographic techniques such as, but not limited to: digital certificates (e.g., X.509 authentication framework), digital signatures, dual signatures, enveloping, password access protection, public key management, and/or the like."); *id.* at 10:45-60 ("[p]referably, the database is a conventional, fault tolerant, relational, scalable, secure database … Alternatively, the DOIAT database may be implemented using various standard data structures"); *id.* at 8:22-23 ("[a] storage device 114 may be any conventional computer system storage."); *id.* at 8:64-65 ("[t]he operating system preferably is a conventional product"); *id.* at 9:21-22 ("[t]he information server may be a conventional Internet information server"); *id.* at 6:58-61 ("The CPU interacts with memory through signal passing through conductive conduits to execute stored program code according to conventional data process techniques."); *id.* at 9:58-59 ("[p]referably, the user interface is a conventional graphic user interface").

DEFENDANT AXIOM CORPORATION'S
MOTION TO DISMISS FOR FAILURE TO STATE
A CLAIM UNDER RULE 12(b)(6) - 17
Case No. 2:21-cv-01594



Helsell Fetterman LLP
1001 Fourth Avenue, Suite 4200
Seattle, WA 98154-1154
206.292.1144   WWW.HELSELL.COM

The preceding are examples of functions that directly contravene the requirements of the second prong of the *Alice* test, which requires something "significantly more" than the abstract idea limiting the claim to a specific and unconventional implementation. *See Alice*, 573 U.S. at 223 ("the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention. … Nor is limiting the use of an abstract idea 'to a particular technological environment.'").

The use of unique identifiers (such as UPUNI or E-UPUNI) is not an inventive concept. As noted above with respect to *Alice*'s step one, the use of such identifiers is itself an abstract idea. Indeed, the '151 Patent expressly notes that using and generating unique identifiers was conventional and well-known prior to the alleged date of invention. *See* '151 Patent at 3:37-64 ("Background" section) ("The Corporation for National Research Initiatives has created and implemented a new means of naming and locating information, called the Handle System. … One common type of Handle is known as a Digital Object Identifier (DOI).").

Similarly, the remaining limitations of the asserted claim recite well-understood, routine, conventional and non-inventive activities that are not material for purposes of Section 101, including:

- *effecting a determination*: "effecting determination of if information ... has an unique, persistently accessible, and universal name identifier (UPUNI)," "effecting determination of if the desired information is inaccessible," "effecting determination of if there exists an UPUNI that represents the entity (E-UPUNI)";

- *providing data*: "effecting the resolution of the entity device," "effecting the provision of entity verification information," "effecting provision of access credentials."



HELSELL
FETTERMAN

Helsell Fetterman LLP
1001 Fourth Avenue, Suite 4200
Seattle, WA 98154-1154
206.292.1144   WWW.HELSELL.COM

These activities are routinely practiced in data management. As in virtually every case in which patents using computers as tools have been invalidated, the claim relies entirely on off-the-shelf "well-understood, routine, or conventional" technology. *See, e.g.*, *In re TLI Commc'ns, LLC Patent Litig.*, 823 F.3d 607, 613 (Fed. Cir. 2016) ("[For the second step of *Alice* to be satisfied,] the components must involve more than [the] performance of well-understood, routine, conventional activities previously known in the industry."); *see also Supercell*, 2018 WL 1609584, at *7 (Gonzalez Rogers, J.) ("When claims like the Asserted Claims are directed to an abstract idea and merely require generic computer implementation, they do not move into section 101 eligibility territory" (quotation omitted)). And, as explained above for *Alice* step one, these are abstract steps that recite no particular or limiting implementation—they are abstract steps that have traditionally been performed in the real world. These steps cannot provide an inventive concept.

Nor does consideration of the claim limitations as an ordered combination transform their nature. The limitations (considered together) do not add anything material. The order of the claimed steps to effect access verification —(1) determining the unique identifier associated with the requested information, (2) determining if access to the information is restricted, (3) identifying and/or naming the user that is requesting the information; (4) obtaining the user's verification information, (5) verifying the user's access rights, and (6) providing the information to the verified user—was known and conventional. Moreover, the steps are logically sequenced as required for access verification to operate. For example, verifying access before obtaining the identity of a user would defeat the very purpose. Thus, the ordered combination does not provide an inventive concept. *See, e.g.*, *PersonalWeb*, 8 F.4th 1310 at 1316-17 (concluding that there was nothing inventive about the claim details of receiving a request including data and in response to the request, determining whether access to data is authorized and allowing or not allowing access



Helsell Fetterman LLP
1001 Fourth Avenue, Suite 4200
Seattle, WA 98154-1154
206.292.1144   **WWW.HELSELL.COM**

based on the determination, individually and as an ordered combination, to confer patent eligibility on an otherwise abstract idea).

### C.     No Questions of Fact Preclude Dismissal Under Section 101.

Where, as here, no genuine factual disputes exist as to whether the claimed invention is "well-understood, routine, and conventional," it is appropriate to determine patent eligibility on a motion to dismiss. *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018). Plaintiff's Complaint is bereft of any factual allegation that the claimed invention is unconventional. Any such allegations would be untenable, as the claim made by '151 Patent is completely aimed at the abstract idea of using conventional computer systems and unique identifiers to control access to information. As here, dismissal under Rule 12(b)(6) is appropriate where, notwithstanding the allegations in the complaint or alleged contrary extrinsic evidence, the claims and specifications lack an inventive concept. *See ChargePoint, Inc.,* 920 F.3d at 776 (affirming dismissal under Rule 12(b)(6)); *see also Athena Diagnostics, Inc. v. Mayo Collaborative Servs.*, LLC, 915 F.3d 743, 755-56 (Fed. Cir. 2019), *cert. denied*, 140 S. Ct. 855 (2020) (ruling that the district court properly dismissed the complaint because "expert declaration made allegations inconsistent with the [patent at issue]").

### D.     The Complaint Lacks Factual Support.

In the alternative, to the extent the Court does not dismiss the Plaintiff's Complaint under Section 101, the Court should dismiss the Plaintiff's Complaint because it fails to adequately plead infringement of each limitation of Claim 12 of the '151 Patent.



Helsell Fetterman LLP
1001 Fourth Avenue, Suite 4200
Seattle, WA 98154-1154
206.292.1144   WWW.HELSELL.COM

The Complaint itself does not contain anything more than legal conclusions parroted from relevant statutes. Even though Plaintiff alleges that the claim chart attached to the Complaint as Exhibit B indicates that Defendant's system infringes upon the all limitations of Claim 12 of the '151 Patent, it does not. Dkt. #1-2. The claim chart merely parrots the language of the claims with minor changes and shows images of Defendant's website without explaining the manner in which such images allegedly indicate how the limitations of the '151 Patent's claim(s) are met. *See Pieczenik v. Bayer Corp.*, 474 Fed. Appx. 766, 771 (Fed. Cir. 2012) (court dismissed infringement claim due to patentee's failure to sufficiently plead which aspects of the allegedly infringing products infringed upon patentee's patent).

In particular, the claim chart attached as Exhibit B to the Complaint fails to show how the accused system allegedly infringe many of the limitations in Claim 12. For example, Claim 12 requires:

- "an unique, persistently accessible, and universal name identifier (UPUNI) <u>embedded</u> within the desired information";

- the step of "effecting <u>determination of if [the desired] information ... has</u>" a UPUNI;

- the step of "effecting <u>determination of if there exists an UPUNI that represents the entity (E-UPUNI)</u>";

- the step of "effecting <u>generation of the E-UPUNI</u>, if the entity is un-represented by an UPUNI"; and

- the step of "effecting the <u>resolution of the entity device</u> to the desired information's UPUNI (DI-UPUNI)."

DEFENDANT AXINOM CORPORATION'S
MOTION TO DISMISS FOR FAILURE TO STATE
A CLAIM UNDER RULE 12(b)(6) - 21
Case No. 2:21-cv-01594



(emphasis added).

None of the images in Exhibit B to the Complaint present a UPUNI embedded within a specific information resource, any process to determine whether such information contains a UPUNI, any process to determine whether the party seeking access to the information has a E-UPUNI, any mandatory E-UPUNI generation process, or any resolution process specific to a party's specific device. Dkt. #1-2. *See CyWee Grp. Ltd. v. HTC Corp.*, 312 F. Supp. 3d 974, 981 (W.D. Wash. 2018) (court finding screenshots insufficient to support plaintiff's patent infringement claim); *see Chapterhouse, LLC v. Shopify, Inc.*, No. 2:18-CV-00300, 2018 WL 6981828, at *2 (E.D. Tex. Dec. 11, 2018) (dismissing a direct infringement claim where plaintiff merely broke down "the exemplary claim into individual elements with [] screenshots," finding that "screenshots themselves [do not] constitute the requisite factual allegations" and that "Plaintiff must further allege how the screenshots meet the text of the exemplary claim in order to lay out sufficient factual allegations which might permit the Court to find that the *Iqbal* standard is met").

Due to the preceding deficiencies, Plaintiff failed to provide sufficient factual allegations to satisfy the *Twombly/Iqbal* standard; as such, the Plaintiff's Complaint should be dismissed.

## VI.    CONCLUSION

Because the asserted Claim 12 of the '151 Patent recites an abstract idea with no inventive concept, Defendant Axinom Corporation respectfully requests that the Court grant this motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). In the alternative, Axinom asks the Court to dismiss the Complaint for failing to sufficiently plead infringement of the '151 Patent under the *Twombly/Iqbal* pleading standard.

DEFENDANT AXINOM CORPORATION'S
MOTION TO DISMISS FOR FAILURE TO STATE
A CLAIM UNDER RULE 12(b)(6) - 22
Case No. 2:21-cv-01594



1   DATED this 29th day of August, 2022.

2                                              HELSELL FETTERMAN LLP

3

4                                              By:   /s/Michelle Q. Pham
                                               Michelle Q. Pham, WSBA No. 44286
5                                              1001 Fourth Avenue, Suite 4200
                                               Seattle, WA 98154
6                                              Telephone: (206) 292-2139
                                               E-mail: mpham@helsell.com
7                                              *Attorney for Defendant Axinom Corporation*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

DEFENDANT AXINOM CORPORATION'S
MOTION TO DISMISS FOR FAILURE TO STATE
A CLAIM UNDER RULE 12(b)(6) - 23
Case No. 2:21-cv-01594



1

## DECLARATION OF SERVICE

2

The undersigned, hereby declares under penalty of perjury of the laws for the State of

3

Washington, that on the 29th day of August, 2022, I caused to be served a true and correct

4

copy of the foregoing document to which this declaration is attached, upon the following

5

counsel/ parties of record via the means indicated below:

6

| PARTY/COUNSEL | DELIVERY METHOD |
|---|---|
| **Attorney for Plaintiff**<br><br>Brian Holloway, WSBA No. 57100<br>HOLLOWAY INTELLECTUAL PROPERTY, PLLC<br>535 16th Avenue E<br>Seattle, Washington, 98112<br>(206) 412-5472 | ☒ Via First Class U. S. Mail<br>☐ Via Legal Messenger<br>☐ Via Facsimile<br>☒ Via CM/ECF E-Service<br>☒ Email:<br>brian@hollowayip.org |

7

8

9

10

11

12

13

14

   _s/Lyndsay Taylor_

15

Lyndsay Taylor, Legal Secretary
ltaylor@helsell.com

16

17

18

19

20

21

22

23

24

25

DEFENDANT AXINOM CORPORATION'S
MOTION TO DISMISS FOR FAILURE TO STATE
A CLAIM UNDER RULE 12(b)(6) - 24
Case No. 2:21-cv-01594



Helsell Fetterman LLP
1001 Fourth Avenue, Suite 4200
Seattle, WA 98154-1154
206.292.1144   WWW.HELSELL.COM